IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD HERMAN WILLIAMS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ANDREW SAUL, Commissioner of Social Security[1] | : | NO. 18-171 |
| | : | |

**MEMORANDUM AND ORDER**

ELIZABETH T. HEY, U.S.M.J.                                                                    June 26, 2019

Ronald Herman Williams ("Plaintiff") seeks review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's decision denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). For the reasons that follow, I conclude that the decision of the Administrative Law Judge ("ALJ") denying benefits is supported by substantial evidence and will affirm the Commissioner's decision.

**I.    PROCEDURAL HISTORY**

Plaintiff was born on April 21, 1954, see tr. at 204, 208, has completed high school, and has past work experience as an airport utility worker, housekeeping supervisor, cleaner, and airline security representative. Id. at 69-75, 89, 240. He filed for DIB and SSI, respectively, on May 13 and September 5, 2014, claiming disability as of October 28, 2011, due to major depressive disorder, generalized anxiety, and numbness

---

[1]Andrew Saul became the Commissioner of Social Security ("Commissioner") on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Mr. Saul should be substituted for the former Acting Commissioner, Nancy Berryhill, as the defendant in this action. No further action need be taken to continue this suit pursuant to section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

in his fingers and lips. Id. at 117, 118, 204, 208, 239. The applications were denied initially, id. at 119-23, 124-27, and Plaintiff requested an administrative hearing before an ALJ, id. at 131-32, which took place on March 13, 2017. Id. at 64-92. On May 8, 2017, the ALJ found that Plaintiff was not disabled. Id. at 41-52. The Appeals Council denied Plaintiff's request for review on November 24, 2017, id. at 1-3, making the ALJ's May 8, 2017 decision the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1472.

Plaintiff commenced this action in federal court on January 12, 2018. Doc. 1. In accordance with 28 U.S.C. § 636(c), the parties voluntarily consented to magistrate judge jurisdiction and the Honorable Paul S. Diamond, to whom the case was assigned, referred the case to me for all further proceedings. Docs. 17 & 18.

## II. LEGAL STANDARD

To prove disability, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for . . . not less than twelve months." 42 U.S.C. § 423(d)(1). The Commissioner employs a five-step process, evaluating:

> 1. Whether the claimant is currently engaged in substantially gainful activity;
>
> 2. If not, whether the claimant has a "severe impairment" that significantly limits his physical or mental ability to perform basic work activities;
>
> 3. If so, whether based on the medical evidence, the impairment meets or equals the criteria of an impairment listed in the "listing of impairments," 20 C.F.R. pt. 404, subpt. P, app. 1, which results in a presumption of disability;

> 4. If the impairment does not meet or equal the criteria for a listed impairment, whether, despite the severe impairment, the claimant has the residual functional capacity ("RFC") to perform his past work; and
>
> 5. If the claimant cannot perform his past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

See Zirnsak v. Colvin, 777 F.2d 607, 610 (3d Cir. 2014); see also 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Plaintiff bears the burden of proof at steps one through four, while the burden shifts to the Commissioner at the fifth step to establish that the claimant is capable of performing other jobs in the local and national economies, in light of his age, education, work experience, and RFC. See Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 92 (3d Cir. 2007).

The court's role on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999). Therefore, the issue in this case is whether there is substantial evidence to support the Commissioner's conclusions that Plaintiff is not disabled and is capable of performing jobs that exist in significant numbers in the national economy. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and must be "more than a mere scintilla." Zirnsak, 777 F.2d at 610 (quoting Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)). The court has plenary review of legal issues. Schaudeck, 181 F.3d at 431.

## III. DISCUSSION

### A. ALJ's Findings and Plaintiff's Claim

The ALJ found that Plaintiff suffered from several severe impairments at the second step of the sequential evaluation; status-post stroke with Dejerine-Roussy syndrome,[2] major depressive disorder, and anxiety disorder. Tr. at 43. The ALJ found that Plaintiff did not have an impairment or combination of impairments that met the Listings, id. at 44, and that Plaintiff retained the RFC to perform medium work[3] except he can occasionally climb ramps and stairs; he should never climb ladders, ropes, or scaffolds; he cannot walk on uneven surfaces; he can occasionally kneel, crouch, and crawl without limitation; he is limited to unskilled work, which is simple, routine, and repetitive; his supervision must be simple, direct and concrete; he must not be required to work at fast-paced production line speeds; and should have only occasional workplace changes. Id. at 46. At the fourth step of the evaluation, the ALJ found that Plaintiff could return to his past relevant work as a cleaner. Id. at 50. In the alternative, the ALJ

---

[2]Dejerine-Roussy Syndrome, also called thalamic syndrome, is "caused by a lesion in the thalamus and characterized by contralateral hemianesthesia." Dorland's Illustrated Medical Dictionary, 32nd ed. (2012) ("DIMD") at 1850. Thalamic refers to the thalamus, a part of the brain that "acts as a gatekeeper for messages passed between the spinal cord and the cerebral hemispheres." See https://www.mayoclinic.org/brain/sls-20077047?s=5 (last visited June 25, 2019).

[3]Medium work involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objects weighing up to twenty-five pounds. If someone can do medium work, the Administration has determined that he or she can do sedentary and light work. 20 C.F.R. §§ 4041567(c), 416.967(c).

4

found at the fifth step that there were other jobs existing in the national economy that Plaintiff could perform.  Id.

Plaintiff's sole claim is that the ALJ's decision is not supported by substantial evidence because the ALJ improperly rejected the medical opinion of Frank Zimba, M.D., the state agency consultative examiner, who was the only examining physician to offer a medical opinion regarding Plaintiff's physical impairments and limitations.  Doc. 10.  Defendant responds that substantial evidence supports the ALJ's decision to discount the opinion of Dr. Zimba.  Doc. 13 at 6-20.  In reply, Plaintiff concedes that it is the ALJ's responsibility to make the RFC determination, but argues that the ALJ erred in that formulation by failing to follow the rules governing the analysis of evidence.  Doc. 16.

### B. Summary of Medical Evidence

The record establishes that Plaintiff suffered an ischemic stroke[4] on October 6, 2012, when he was admitted to Penn Presbyterian Hospital with sudden numbness on the left side of his face and left arm and hand.  Tr. at 300.  An MRI confirmed an acute infarct[5] involving the right thalamus.  Id. at 301.  He was discharged three days later.  Id.  Plaintiff continued treatment for "mild residual symptoms" of his stroke with neurologist Michael Gelfand, M.D., in January and March 2013.  Id. at 347-58.  At the latest of these visits, the doctor noted the following: "Continues to experience numbness of left hand

---

[4] An ischemic stroke is a sudden and severe attack caused by a deficiency of blood usually due to functional constriction or actual obstruction of a blood vessel.  DIMD at 961, 1786.

[5] An infarct is "an area of coagulation necrosis in a tissue due to local ischemia resulting from obstruction of circulation to the area."  DIMD at 934.

and face. Continued clumsiness in left hand . . . . Speech is back to normal. . . . Walking improved but continues to feel slightly off in left leg." Id. at 349.

Plaintiff was seen in the emergency department of Penn Presbyterian on two other occasions during the relevant period. Tr. at 325-40, 481-500. On October 14, 2013, Plaintiff complained of numbness in his right arm and both legs and was discharged with a diagnosis of high blood pressure. Id. at 327, 331.[6] On March 5, 2016, Plaintiff complained of lightheadedness and syncope. Id. at 487. Jeffrey Kramer, M.D., who treated Plaintiff in the emergency department, indicated that the syncope was due to dehydration. Id. at 489.

Plaintiff treated with Spectrum Health Services as his primary care physicians on six occasions during the relevant period. Tr. at 430-51. His primary complaints related to depression and anxiety, and neck pain Plaintiff believed was related to his anxiety. Id. Doctors prescribed lisinopril, pravastatin, mirtazapine, and Flexeril for spasm as needed.[7] Plaintiff received mental health treatment at Community Council from October 2012 to May 2014 for major depressive disorder, generalized anxiety disorder, and bereavement

---

[6]The ALJ erroneously states that Plaintiff returned to the emergency department "a few days" after his stroke. Tr. at 47 (citing id. at 325-31). The ALJ's citations are to the records for Plaintiff's emergency department visit on October 15, 2013, a year after Plaintiff's stroke.

[7]Lisinopril is used to treat high blood pressure. See https://www.drugs.com/lisinopril.html (last visited June 19, 2019). Pravastatin is used to lower cholesterol and triglycerides. See https://www.drugs.com/pravastatin.html (last visited June 19, 2019). Mirtazapine is an antidepressant. See https://www.drugs.com/mirtazapine.html (last visited June 19, 2019). Flexeril is a muscle relaxant used to treat skeletal muscle conditions, including spasms. See https://www.drugs.com/flexeril.html (last visited June 19, 2019).

(related to his son's death in a car accident). Id. at 396-429. Plaintiff was also treated for glaucoma during the relevant period at Scheie Eye Institute. Id. at 366-87, 478-80.

Dr. Zimba conducted a consultative examination on November 11, 2014, which included a medical examination, an evaluation of Plaintiff's range of motion, and a Medical Source Statement of Ability to Do Work-Related Activities (Physical). Tr. at 460-73. The doctor indicated that Plaintiff's chief complaints involved depression and anxiety, and that he had a secondary complaint stemming from his 2012 stroke involving sensory disturbance in his left arm and leg, difficulty with ambulation, and pain in his left arm and leg that does not respond to treatment. Id. at 460. On examination, the doctor found that Plaintiff had decreased sensitivity to light touch in his left arm and leg, but strength was 5 out of 5 in his upper and lower extremities. Id. at 462. Plaintiff's range of motion was normal in all respects. Id. at 464-67. Dr. Zimba diagnosed Plaintiff with a right thalamic infarct with Dejerine-Roussy syndrome, depression, and bipolar syndrome with stable control. Id. at 462.

Dr. Zimba opined that Plaintiff could occasionally lift and carry up to fifty pounds, frequently lift and carry up to twenty pounds, and continuously lift up to ten pounds. Tr. at 468. He could sit for four hours in a workday in two-hour increments, and could stand and walk for two hours each in a workday in hour-long increments. Id. at 469. With respect to the use of both his left and right hands, the doctor found that Plaintiff could frequently reach overhead, and continuously reach elsewhere, handle, finger, feel, and push/pull. Id. at 470. Plaintiff could frequently use his right foot to operate foot controls, and occasionally use his left foot for that purpose. Id.

At the initial consideration level, based on his review of the records, Vrajlal Popat, M.D., concluded that Plaintiff was able to occasionally lift and carry fifty pounds and frequently lift and carry twenty-five pounds, stand and walk for six hours and sit for six hours in a workday, and had an unlimited ability to operate hand and foot controls. Tr. at 111. Richard Small, Ph.D., found based on his review of the records that Plaintiff suffered from affective and anxiety disorders which caused mild difficulties in activities of daily living and social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. Id. at 109-10.

### C. **Consideration of Plaintiff's Claim**

Plaintiff's challenge to the ALJ's decision involves his consideration of Dr. Zimba's opinions regarding Plaintiff's physical abilities. Generally, the governing regulations dictate that an ALJ must give medical opinions the weight he deems appropriate based on factors such as whether the physician examined or treated the claimant, whether the opinion is supported by medical signs and laboratory findings, and whether the opinion is consistent with the record as a whole. 20 C.F.R. §§ 404.1527(c), 416.927(c).[8]

"The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects." Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (citing Stewart v. Sec'y HEW, 714 F.2d 287, 290 (3d Cir. 1983)). "When a conflict in the

---

[8]Although the regulations governing the consideration of medical evidence have been amended, the standards I rely on for this discussion are those used for consideration of claims filed prior to March 27, 2017.

evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Id. (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)). An ALJ may afford a medical opinion "more or less weight depending on the extent to which supporting explanations are provided. Id. (citing Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir. 1985)). Additionally, "the more consistent a medical opinion is with the record as a whole, the more weight" it will be given. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). It is well established that "[a]n ALJ may accept some of a medical source's opinions while rejecting other opinions from the same source." Comiskey v. Astrue, Civ. No. 09-252, 2010 WL 308979, at *9 (E.D. Pa. Jan. 27, 2010) (citing Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 202-04 (3d Cir. 2008)).

After stating that he gave great weight to the opinions of the state agency reviewing experts (Drs. Popat and Small) because they were consistent with the record as a whole, the ALJ addressed Dr. Zimba's opinions:

> I have given limited weight to the opinions of consultative examiner Frank Zimba, MD ([tr. at 460-73]). In November 2014, Dr. Zimba examined [Plaintiff] and opined that [Plaintiff] was capable of lifting and carrying up to 50 pounds occasionally, but that he could sit only 4 hours in an eight-hour workday and stand and walk only 2 hours each in an eight-hour workday (Id.). Moreover, he opined that [Plaintiff] had difficulty reaching, handling, fingering, feeling, pushing, and pulling with both hand[s], and that he has difficulty using both feet, as well as postural and environmental limitations (Id.). However, the doctor's own reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect if [Plaintiff] were as limited as opined, and the doctor did not specifically address this weakness. For example, he opined that [Plaintiff] has difficulty reaching, handling, finger[ing], feeling, pushing, and pulling with both hands (Id.). Yet, the doctor's

9

> own report noted that [Plaintiff] had 5/5 strength in all
> extremities, decreased sensation in only the left arm and leg,
> and could zip, button, and tie (Id.). Moreover, there were not
> objective findings to support the reported limitations standing
> and walking, as [Plaintiff] had a normal gait, could walk on
> heels and toes without difficulty, could fully squat, and did
> not need assistance getting on an[d] off the exam table (Id.).
> Rather, it appears the doctor apparently relied quite heavily
> on the subjective report of symptoms and limitations provided
> by [Plaintiff], and seemed to uncritically accept as true most,
> if not all, of what [Plaintiff] reported. Yet, as explained
> elsewhere in this decision, there exist good reasons for
> questioning the reliability of [Plaintiff's] subjective
> complaints.

Tr. at 49.[9] Earlier in the ALJ's decision the ALJ reviewed the medical record in addressing Plaintiff's subjective complaints of pain and numbness related to his stroke. Although Plaintiff suffered a stroke in October 2012, the ALJ noted that the medical record established that numbness resolved before he was discharged. Id. at 47; see also id. at 300 ("By the time patient arrived in ED at 4:30 AM [on October 6, 2012], his face and arm numbness completely improved with the exception of some left-sided lip numbness."). The ALJ noted that during Plaintiff's follow up care, his treating neurologist found Plaintiff's reflexes, gait, and sensation to pinprick were all normal, id. at 47, and referred Plaintiff for physical therapy for mild residual gait difficulty, and no physical therapy notes appear in the record. Id. (citing id. at 350). Similarly, the ALJ

---

[9]At the administrative hearing, Plaintiff testified that he continues to have lingering numbness on his left side, which affects his shoulder when he lifts too much, causes him to drop things with his left hand, causes difficulty with his left foot climbing stairs, and causes him to change position between sitting and standing continuously. Tr. at 75-78. He testified that he regularly stays in his night clothes and sits. Id. at 81.

relied on the treatment notes from Plaintiff's primary care physician. The ALJ noted that a year after Plaintiff's stroke, he reported no numbness or weakness, normal speech, and 5/5 strength in all extremities. Id. at 47 (citing id. at 444). Thus, there is support in the medical record for the ALJ's rejection of the limitations in standing and walking that Dr. Zimba imposed.[10]

Moreover, as the ALJ discussed, Dr. Zimba's opinions were inconsistent with his own findings on examination. For example, despite finding that Plaintiff's strength was 5/5 in his upper and lower extremities and that Plaintiff had the ability to zip, button, and tie, the doctor found that Plaintiff was limited to occasional operation of left foot controls and frequent operation of right foot controls and overhead reaching with both hands. Tr. at 462, 470. Likewise, Plaintiff's gait and stance were normal, he could walk on heels and toes without difficulty, and had no reduced range of motion, inconsistent with limitations to sitting only four hours and standing and walking only two hours each in a workday. Id. at 461, 469.

---

[10]Plaintiff argues that the ALJ did not conclude that Dr. Zimba's opinion was inconsistent with the underlying record and argues that the record provides support for Dr. Zimba's opinion. Doc. 10 at 14. To the contrary, the ALJ rejected Plaintiff's subjective complaints relying on the evidence in the record and noted that Dr. Zimba's assessment was based on Plaintiff's subjective complaints. Ergo, the ALJ found that Dr. Zimba's assessment was inconsistent with the record. Moreover, Plaintiff's argument that the records evidencing his stroke and "mild residual symptoms" noted by Dr. Gelfand somehow support Dr. Zimba's assessment is inaccurate. Despite the fact that Plaintiff suffered a stroke, the evidence is that he had mild residual symptoms and told his primary care physician that he had no pain or weakness a year later.

Plaintiff complains that the ALJ did not methodically review each of the factors listing in sections 404.1527(c) and 416.927(c).  See Doc. 10 at 12.  However, I find that the ALJ's opinion is adequate to exercise meaningful review, and find no reason to remand the case.  Although Dr. Zimba is an examining physician specializing in neurosurgery, the limitations he stated in his assessment are inconsistent with his own findings on examination and the record as a whole.

## IV.   CONCLUSION

For the reasons set forth above, I find that the ALJ's findings are supported by substantial evidence.  Accordingly, I will affirm the Commissioner's final decision denying DIB and SSI.  An appropriate Order follows.